**JS-6**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re AKHOIAN ENTERPRISES, INC.,) Debtor ) | Case No. CV 19-8277 DMG |
| ) | |
| AKHOIAN ENTERPRISES INC., et al., ) | **ORDER RE BANKRUPTCY APPEAL [1]** |
| ) | |
| Plaintiff-Appellants, ) | |
| v. ) | |
| ) | |
| FIRST-CITIZENS BANK & TRUST) COMPANY, et al., ) | Bankruptcy No.: 1:17-bk-10017-MT |
| ) | Adversary No.: 1:18-ap-01127-MT |
| Defendant-Appellees. ) | |
| _____) | |

Before the Court is an appeal by Appellants John and Tamar Akhoian, of an Order of the United States Bankruptcy Court for the Central District of California. [Doc. # 1.] For the reasons discussed herein, the Court **AFFIRMS** in part and **REVERSES** in part the decision of the Bankruptcy Court and **REMANDS** for further proceedings.

# I.

## PROCEDURAL BACKGROUND

On September 24, 2019, the Akhoians filed a notice of appeal of an order of the Bankruptcy Court dismissing the adversary proceeding between Plaintiff-Appellants and Defendant-Appellees, No. 1:18-ap-01127-MT. [Doc. # 1.] On November 15, 2019, the Court received notice that the bankruptcy record was complete. [Doc. # 7.] On May 27, 2020, the Court set a briefing schedule after denying Appellee First-Citizens Bank and Trust Company (the "Bank")'s motion to dismiss the appeal. [Doc. # 18.] On June 11, 2020, the Akhoians filed their opening brief. Appellants' Opening Brief ("AOB") [Doc. # 19]. On July 13, 2020, the Bank filed its answering brief. Appellee's Answering Brief ("AAB") [Doc. # 21]. On July 27, 2020, the Akhoians filed their reply brief. Appellants' Reply Brief ("ARB") [Doc. # 23].

On November 30, 2020, the Court ordered the parties to provide supplemental briefs addressing three questions, as discussed further below. [Doc. # 24 ("Nov. 30 Order").] The Bank filed its supplemental brief on December 7, 2020, and the Akhoians filed their brief December 14, 2020. Bank's Supp. Brief ("BSB") [Doc. # 25]; Akhoians' Supp. Brief ("ASB")

The Court has considered the parties' submissions and deems this matter suitable for decision without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

# II.

## FACTUAL BACKGROUND

On January 4, 2017, Akhoian Enterprises, Inc. ("AEI") filed a Chapter 7 bankruptcy petition with the Bankruptcy Court. *See* Case No. 1:17-bk-10017-MT. In its bankruptcy schedules, AEI listed an account at the Bank ("Account") which it described as a "non estate 401(k) plan which has a balance of approximately $400,000 which [AEI] contends is a trust account and non-estate property." [Bankruptcy Case Doc. # 13.] On October 11, 2017, the bankruptcy trustee, David Seror, ("Trustee") sent a demand letter to the Bank requesting that all funds in the name of AEI be turned over to the Trustee. *See* Appellee's

Excerpts of the Record ("ER") at 77 [Doc. # 22.]  The Bank responded by sending a cashier's check for $409,821.71, and noting in its cover letter that, "You have indicated on other occasions that you will keep these funds segregated until all ownership claims, disputes or other issues involving the captioned Bankruptcy estate are resolved."  ER 80.

In early October 2018, John and Tamar Akhoian entered into a Settlement Agreement with the Trustee over the Account.  *See* Appellants' Appendix ("AA") at 22-28 [Doc. # 20].  The Akhoians had claimed that the Account was a non-estate retirement fund, of which they were the beneficiaries.  The Trustee asserted, based on the accounting and tax documentation relating to the Account, that it was property of the Estate.  AA 22.  The Akhoians and the Trustee agreed that $185,000 would remain property of the Estate, with the balance to be disbursed to the Akhoians.  The Settlement Agreement included a mutual release by the Akhoians and the Trustee of all claims relating to the Account, and provided that "[t]he Bankruptcy Court, having jurisdiction over the Bankruptcy Case, shall retain jurisdiction over this Agreement and shall resolve any disputes arising under this Agreement."  AA 23, 25.  On November 13, 2018, the Bankruptcy Court entered an order approving the Settlement.  ER 8-9.

On November 16, 2018, the Akhoians, listing AEI as co-plaintiff, filed a Complaint in Los Angeles County Superior Court against the Bank and retirement plan professionals KI, LLC; Kravitz, LLC; Louis Kravitz and Associates, Inc.; and Kravitz, Inc. (together, "Kravitz").  AA 78-86.  The Complaint raised a claim of conversion against the Bank for having turned over the funds in the Account to the Trustee, and claims of negligence against both the Bank and Kravitz for having mistakenly set up the Account as a regular checking account instead of a 401(k) retirement fund, causing it to lose anti-alienation protections.  The Complaint also alleged certain conduct of the Trustee, including determining that the property belonged to the Estate and using possession of the funds as leverage in negotiating settlement—though it did not name him as a Defendant.  *See* AA 82-83.

On December 11, 2018, the Trustee removed the state court action to the Bankruptcy Court, initiating the Adversary Proceeding, Case No. 1:18-ap-01127-MT.  The Akhoians

filed a Motion to Remand ("MTR") on January 10, 2019, arguing that the Trustee did not have standing to remove and that equitable factors favored remand, pursuant to 28 U.S.C. section 1452(b). ER 19-31. On April 10, 2019, the Bankruptcy Court entered a Notice of Tentative Ruling denying the MTR, which it adopted by an Order on April 12, 2019 ("MTR Order"). ER 101-07. In its MTR Order, the Bankruptcy Court found that the Trustee had standing to remove because the claims were property of the Estate and the Trustee was the only real party in interest entitled to bring the claims. It also held that equitable factors weighed against remand because the Account and the causes of action asserted in the Complaint belonged to the Estate, its jurisdiction would prevent inconsistent rulings affecting administration of the Estate, state law issues do not predominate, and the claims fell within the scope of the Settlement Agreement, over which the Bankruptcy Court retained jurisdiction. ER 103-04.

On May 16, 2019, the Trustee moved to voluntarily dismiss the Adversary Proceeding pursuant to Federal Rule of Civil Procedure 41(a) and Federal Rule of Bankruptcy Procedure 7041. ER 136-44. On May 24, 2019, after incorporating proposed revisions from the Bank, the Bankruptcy Court issued an Order Dismissing the Adversary Proceeding with Prejudice ("Dismissal Order"), allowing any party in interest to raise an objection by June 12, 2019. ER 166-68. On June 12, the Akhoians filed their objection, arguing that dismissal would be improper because the Bankruptcy Court lacked subject matter jurisdiction over the action, the Dismissal Order would improperly have claim preclusive effect, and the Order violated the Akhoians' procedural due process rights. ER 170-83. The Bankruptcy Court held a hearing on the objection on June 26, 2019, in which the Court stated that it would "overrule [the objection] and stay with my ruling that it's dismissed with prejudice because I do think there was jurisdiction and it was multiple assets of the estate that have been administered. I think the denial of the remand motion is final and this naturally flows from it." ER 205. On July 5, 2019, the Bankruptcy Court entered an Order Overruling the Objection. ER 209-10.

### III.
### JURISDICTION

The Court has appellate jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 8005 and 28 U.S.C. section 158(c)(1).  Under Rule 8005 and section 158(c)(1), parties may elect to have an appeal heard by a district court instead of the Bankruptcy Appellate Panel.  Fed. R. Bankr. P. 8005; 28 U.S.C. § 158(c)(1).

### IV.
### STANDARD OF REVIEW

A district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo.  Gebhart v. Gaughan (In re Gebhart)*, 621 F.3d 1206, 1209 (9th Cir. 2010) (citing *Abele v. Modern Fin. Plans Servs., Inc. (In re Cohen)*, 300 F.3d 1097, 1101 (9th Cir. 2002)).  Questions of the Bankruptcy Court's jurisdiction are reviewed *de novo*.  *In re Ray*, 624 F.3d 1124, 1130 (9th Cir. 2010).

Bankruptcy Courts' decisions whether to remand cases on equitable grounds are reviewed for abuse of discretion.  *See In re Enron Corp.*, 296 B.R. 505, 508 (C.D. Cal. 2003) ("Bankruptcy courts have broad discretion to remand cases over which they otherwise have jurisdiction on any equitable ground.") (citing 28 U.S.C. § 1452(b)).  "Decisions committed to the bankruptcy court's discretion will be reversed only if 'based on an erroneous conclusion of law or when the record contains no evidence on which [the bankruptcy court] rationally could have based that decision.'"  *In re Conejo Enter., Inc.*, 96 F.3d 346, 351 (9th Cir. 1996) (citation omitted).

### V.
### DISCUSSION

The Akhoians appeal the Dismissal Order on the basis that the Bankruptcy Court lacked jurisdiction to enter it.  Under 28 U.S.C. section 157(b), the Bankruptcy Court has jurisdiction to hear and enter judgment in "all core proceedings arising under" the Bankruptcy Code.  The Bankruptcy Court may also hear non-core proceedings that are "related to" a case under the Bankruptcy Code, except that in such cases the Bankruptcy

Court must submit proposed findings of fact and conclusions of law to the District Court, which shall enter final orders and judgments. *Id.* at § 157(c)(1). Notwithstanding this provision, parties may consent to the Bankruptcy Court's authority to issue orders and judgments in such cases. *Id.* at § 157(c)(2).

In its Order requesting supplemental briefing, the Court noted that in their initial briefing, the parties had concurred that the conversion claim is a "core" proceeding and that the negligence claims are non-core. Nov. 30 Order at 2. The Court asked the parties to answer three questions that they had not addressed in their initial briefing: (1) whether the non-core negligence claims brought by the Akhoians, as individuals, are the property of the Estate; (2) if they are not, whether the Trustee had standing to remove non-core claims that do not belong to the Estate; and (3) whether the Trustee had standing to voluntarily dismiss the Akhoians' non-core negligence claims with prejudice. *Id.* at 2-3.

In their responses, the parties are in agreement as to the first two questions: the Akhoians' negligence claims are not property of AEI's Estate, but the Trustee nonetheless had standing to remove them to the Bankruptcy Court because 28 U.S.C. section 1452(a) allows *any party* to an action to remove the *entire* action, and the Debtor, AEI, is a party to the action. The Trustee stands in the shoes of the Debtor once it enters bankruptcy and has the right to prosecute claims that belonged to the Debtor (now the Bankruptcy Estate) in its name—including by removing actions to which it is a party. BSB at 8-10; ASB at 8-9.[1] The Akhoians and the Bank also agree as to the third question on its face—the Trustee did not have standing to voluntarily dismiss the Akhoians' individual negligence claims—but the Bank disputes the premise of the question. *See* BSB at 7. It contends that, although the Trustee had initially proposed a Rule 41(a) dismissal, the ultimate Dismissal Order was *not* a Rule 41(a) voluntary dismissal. *Id.* Instead, according to the Bank, the Bankruptcy Court *sua sponte* converted the parties' proposed order to an *in*voluntary dismissal on the merits for failure to state a claim under Rule 12(b)(6), though the Bankruptcy Court never

---

[1] Page references to the parties' briefs are to those page numbers inserted by the CM/ECF system.

mentioned Rule 12(b)(6).  *Id.*  The Bank argues in its supplemental brief, for the first time, on an issue never raised or discussed before by the parties or the Bankruptcy Court at any point in the Adversary Proceeding, that the Akhoians' negligence claim is barred by the statute of limitations and that this Court should affirm the dismissal with prejudice on those grounds.  *Id.* at 16-19.

In light of these responses, the Court discusses the propriety of the Dismissal Order as it pertains to the Akhoians' claims.

**A.    The Bankruptcy Court Has Jurisdiction to Hear the Akhoians' Claims**

As discussed, the Akhoians concede that the conversion claims (whether belonging to AEI or to the Akhoians) are core claims.  *See* AOB at 35 ("The turnover of the Bankruptcy funds by the Trustee is a matter that pertains to the core proceedings of the bankruptcy action here and the Court's jurisdiction over that issue.").  Core claims—those "arising in" bankruptcy cases or "arising under" the Bankruptcy Code—are "proceedings that would not exist outside of bankruptcy," including "matters concerning the administration of the estate," "orders to turn over property of the estate," and "proceedings to determine, avoid, or recover preferences."  *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1193 (9th Cir. 2005) (quoting 28 U.S.C. § 157(b)(2)).  The conversion claims accuse the Bank of wrongfully handing over the funds in the Account to the Trustee.  Adjudication of the claims necessarily involves determining whether the Account belongs to the bankruptcy Estate, which clearly arises under the Bankruptcy Code.

For its part, the Bank tacitly concedes that, on the other hand, the negligence claims are *not* core claims.  *See* AAB at 34-39 (arguing that the Bankruptcy Court has jurisdiction over AEI's negligence claims because they are property of the Estate and the Akhoians' because they are subject to ancillary jurisdiction, not because they are core claims).  The essence of the negligence claims is that Kravitz and the Bank breached a duty of care in setting up the Account as a checking account in the name of AEI rather than as a retirement

account in the name of the Akhoians.  These claims arise entirely under state law and would exist outside of bankruptcy.

The negligence claims, however, are "related to" the Bankruptcy Case.  The Bankruptcy Court has "related to" jurisdiction over a claim when "the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.  *In re Pegasus*, 394 F.3d at 1193 (quoting *In re Fietz*, 852 F.2d 455, 457 (9th Cir.1988)).  This low bar is easily met here.  If the Akhoians were to prevail, the Bank would almost certainly seek reimbursement from the Estate for the judgment—which would ultimately represent funds that should have belonged to the Akhoians and not to the Estate.  *See PDG Los Arcos, LLC v. Adams*, 436 F. App'x 739 (9th Cir. 2011) (finding claims related to bankruptcy case where defendants could seek contribution or indemnification from the estate).  Therefore, the Bankruptcy Court had jurisdiction to hear the Akhoians claims.[2]

## B. The Bankruptcy Court Erred in Dismissing the Akhoians' Claims on the Merits

Although the Trustee had standing to remove the Akhoians' claims and the Bankruptcy Court had jurisdiction to hear them, that does not mean that the Trustee had standing to *prosecute* them, or that the Bankruptcy Court had authority to dismiss them on the merits.

### 1. The Trustee Could Not Voluntarily Dismiss the Akhoians' Claims

The Akhoians, as individuals, are not the debtors in the Bankruptcy Case.  The Debtor is AEI—a separate legal entity.  The Bank concedes that the *Akhoians'* claims—as opposed to AEI's claims—are not property of the estate.  The Debtor is not the named party

---

[2] Although the Akhoians technically do not appeal the MTR Order, the Court also notes that the Bankruptcy Court did not abuse its discretion in denying remand.  Observing that it has broad discretion whether to remand on any equitable ground in cases in which it has jurisdiction, the Bankruptcy Court listed a number of factors which it may consider.  *See* ER 103 (citing *In re Cedar Funding, Inc*., 419 B.R. 807, 820 n.18 (B.A.P. 9th Cir. 2009)).  While some of the factors the Bankruptcy Court explicitly discussed rested on erroneous legal premises, as discussed more below, it nevertheless was still well within its discretion to determine that the efficient administration of the estate, the degree of relatedness to the bankruptcy proceeding, and the predominance of bankruptcy issues weighed in favor of maintaining jurisdiction.

to their claims. Crucially, though the Akhoians originally asserted their claims jointly with AEI, neither is AEI the real party in interest. The negligence claims allege that the Bank and Kravitz mistakenly created the Account as a checking account in the name of AEI rather than as a retirement account *in the name of the Akhoians*. The Akhoians, as individuals, are the injured parties. They are the ones who were allegedly denied their retirement funds, not AEI. In fact, AEI as an entity *benefited* from the Bank's alleged negligence, because funds that would have been shielded from the Estate were instead included in it. The Estate gained over $400,000 (prior to the Settlement Agreement) that it otherwise would not have had, which the Trustee could use towards satisfaction of AEI's debts in the Bankruptcy Case. Clearly, the Akhoians' and the Trustee's interests were not aligned—as is evident by their adversarial relationship throughout the litigation.

Yet, the Bankruptcy Court held in its MTR Order—the only substantive written order in the proceeding—that the Trustee was "the only real party in interest entitled to bring the claims," without distinguishing the Akhoians' claims from AEI's. ER 104. From this erroneous determination flowed all of the succeeding events in the Adversary Proceeding. In a May 1, 2019 unilateral status report filed by the Trustee following the MTR Order, the Trustee noted that his removal was based on the claims being property of the Estate and that he was contemplating a dismissal with prejudice pursuant to Rule 41(a)(1). ER 119-20. At a subsequent status conference on May 15, 2019, the Bankruptcy Court stated, "I think you [the Trustee] should file the Rule 41 notice of dismissal . . . I think that would be a procedurally correct way to approach this." ER 130-31. The Bankruptcy Court noted that the Akhoians would be given an opportunity to object. *Id.* The Dismissal Order that followed, while omitting references to Rule 41, referred to the status conference, the MTR Order, and the Trustee's and the Bank's proposed orders in dismissing the claims "on the merits," though without any discussion of those merits. ER 167.

The Akhoians then objected on the basis that the Bankruptcy Court lacked jurisdiction to enter dismissal on the merits of the non-debtors' non-core claims without

any substantive litigation of the merits.  ER 170-183; 195-200.  At a hearing on the Akhoians' objections on June 26, 2019, the Bankruptcy Court said, "it's an unfortunate circumstance for your clients, but it was an asset.  They shouldn't filed [sic] bankruptcy if they didn't want both the—the funds to be evaluated as assets of the estate or the cause of action that they believe they have."  ER 194.  It concluded that it would

> stay with my ruling that it's dismissed with prejudice because I do think there was jurisdiction and it was multiple assets of the estate that have been administered.  I think the denial of the remand motion is final and this naturally flows from it.  So I'm going to stick with the order and overrule your objection.  And I'm sorry for your clients, but I think the Trustee has had a right to make the decisions that he made in this case.

ER 205.

This Court gave the Bank an opportunity to defend the Bankruptcy Court's decision that the Akhoians' claims were property of the Estate and therefore within the purview of the Trustee.  Tellingly, the Bank did not do so.  Instead, it now argues that the Bankruptcy Court actually dismissed for failure to state a claim.  The record belies this notion.  The Bankruptcy Court plainly stated on multiple occasions that it considered all the claims to be property of the Estate, and on that basis it allowed the Trustee to voluntarily dismiss them with prejudice.  By admitting in its supplemental brief that the negligence claims were *not* property of the Estate, the Bank effectively concedes that the Dismissal Order was erroneous.[3]

---

[3] The Bank argues that this Court can affirm on any ground supported by the record, and that it should consider the statute-of-limitations argument even if the Bankruptcy Court did not.  BSB at 18-19.  The Court declines to rule on the merits based on an issue belatedly raised for the first time in a supplemental appellate brief without first giving the Akhoians the opportunity to actually litigate before a trial court.  The Bank claims that the Akhoians were given the opportunity to be heard with their objection to the Dismissal Order, and that their choice to argue jurisdiction and due process rather than the merits was their own fault.  *Id.*  But how would the Akhoians have known to object to a statute of limitations affirmative defense that had never even been mentioned before?  The Court need not address whether the Akhoians' constitutional due process rights were violated to determine that equitable considerations justify allowing them the opportunity to prosecute their own claims.

**2.**    **The Akhoians Did Not Consent to the Bankruptcy Court's Authority to Enter a Final Order or Judgment on Their Non-Core Claims**

Because the Akhoians' negligence claims are non-core, they must consent to allow the Bankruptcy Court to enter final orders.

Consent can be either express or implied, though it must be knowing and voluntary. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948 (2015).  It can be given by "actions rather than words." *Id.* (quoting *Roell v. Withrow*, 538 U.S. 580, 590 123 (2003)).  "[T]he key inquiry is whether 'the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case' before the non-Article III adjudicator." *Id.*

The Bank provides two theories for the Akhoians having given consent to the Bankruptcy Court's adjudication.  First, it argues that the Settlement Agreement between the Akhoians and the Trustee—in particular, the Agreement's provision for the Bankruptcy Court to retain jurisdiction over disputes arising under the Agreement—amounted to express consent.  The Bankruptcy Court seemed to consider the Settlement Agreement to be relevant as well, noting in the MTR Order that "[t]he facts alleged in the Complaint in support of the claims are the subject of the Compromise Motion and this Court's Compromise Order" and that "this Court will likely be called on to interpret and enforce its own order approving the settlement of the very same claims which are now being asserted against FCB." ER 104.

But while the Akhoians settled their claims against *the Trustee*, the Akhoians have not sued the Trustee in the Adversary Proceeding.  The Defendants in the Adversary Proceeding—Kravitz and the Bank—were not parties to the Settlement Agreement.  The Akhoians did not release the Bank from any claims.  It was not a global settlement—only the parties to the Agreement (the Akhoians and the Trustee) released their claims against one another. *See* AA 22-23.  The Agreement's extension of jurisdiction provides for the Bankruptcy Court to "retain jurisdiction over this Agreement and shall resolve any disputes arising under this Agreement."  Claims against parties who were not subject to the

Settlement Agreement do not arise under the Agreement.  While the claims may arise from the same underlying transactions or occurrences as the claims that were settled, that does not mean that the Settlement Agreement governs them.  Essentially, the Akhoians reached a settlement with the Trustee that allowed the Estate to retain $185,000 of the disputed funds, then decided to go after the Bank and Kravitz directly for that amount.  Nothing in the Agreement or otherwise prevents them from doing so.  Just as in any other claim with multiple potential defendants, the plaintiff may settle with one defendant for a portion of the damages while reserving the right to pursue other defendants—without being cabined by the settlement with the first defendant.

The Trustee observed in his May 1, 2019 status report that "the Complaint contained erroneous and disparaging allegations concerning the Trustee's administration of the Debtor's bankruptcy case regarding a settlement approved by this Court," arguing that "those allegations should be before this Court."  ER 119.  But a Complaint can contain "disparaging" allegations against a person in passing without actually asserting a claim for relief against him.  The Complaint does not seek any relief from the Trustee.  *See* AA 78-86.  The claims it does assert, against parties who are not subject to the Settlement Agreement, are not governed by the Agreement—including its jurisdictional provision. The Agreement therefore does not amount to consent to the Bankruptcy Court's jurisdiction over the Akhoians' claims against the Bank or Kravitz.

The Bank also argues that the Akhoians impliedly consented to the Bankruptcy Court's adjudication by actively participating in the litigation and appearing before the court.  But they did so only after vigorously objecting to the Bankruptcy Court's jurisdiction at every stage.  As soon as the case was removed, they moved to remand based on lack of jurisdiction.  When their motion was denied—with the Bankruptcy Court holding that their claims were property of the Estate—the Akhoians argued at the following status conference that the Trustee's intent to voluntarily dismiss should amount to abandonment of the claim, without prejudice.  *See* ER 127.  The Bankruptcy Court rejected this suggestion, indicating that it would allow the dismissal with prejudice to go forward

while giving the Akhoians the opportunity to object. ER 130-31. The Akhoians accepted this procedure with the understanding that they would get to formally object to the dismissal in writing, which they then did, again largely on jurisdictional grounds. Considering the "deeply factbound analysis of the procedural history" of this case, the Akhoians did not impliedly consent to the Bankruptcy Court's adjudication. *Wellness*, 135 S. Ct. at 1949.

In sum, even if the Bankruptcy Court had *sua sponte* dismissed for failure to state a claim, it erred by doing so without the Akhoians having consented to its authority to enter such an order.

## VI.

## CONCLUSION

In light of the foregoing, the Court **AFFIRMS** the Bankruptcy Court's Dismissal Order of the conversion claims and the claims belonging to AEI, but **VACATES** that portion of the Order that dismissed the Akhoians' non-core negligence claims. The Court **REMANDS** the action back to the Bankruptcy Court for the Akhoians to prosecute their negligence claims against the Bank and the Kravitz defendants, and for the Bankruptcy Court to submit proposed findings of fact and conclusions of law to the District Court upon the conclusion of the proceedings.

**IT IS SO ORDERED.**

DATED:  April 14, 2021

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE

cc: Bankruptcy Court

-13-